UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-518-GWU

TONI MARIE HOSKINS,                                                         PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                            DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?  If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In

such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Toni Marie Hoskins, a 41-year-old woman with a high school education and work experience as a printer and an insurance clerk, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of residual symptoms from a lumbar fusion in 1997 or 1998, scoliosis, and a pain disorder with resulting depression. (Tr. 21). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Hoskins retained the residual functional capacity to perform her past relevant work as a printer, and therefore was not entitled to benefits. (Tr. 23-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff could perform any jobs if she were limited to "light" level exertion, could occasionally climb, stoop, bend, crouch, and crawl, could have no exposure to unprotected heights and moving machinery, and could not perform more than simple work

instructions. (Tr. 342-3). The VE responded that with these restrictions, Mrs. Hoskins could return to her job as a printer. (Tr. 343). He also named alternative jobs that the plaintiff could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. There is an additional issue in that the plaintiff's Date Last Insured (DLI) was June 30, 2004 (Tr. 55), meaning that she had to establish disability prior to that date in order to be entitled to DIB.

Mrs. Hoskins alleged disability due to scoliosis, spondylolisthesis, and a spinal fusion. (Tr. 77). She testified that doctors had found spondylolisthesis in her spine at the age of 14, and it gradually became worse (Tr. 339). Although the spinal fusion had been performed in August, 1998, and another operation at the bone graft site on her right hip had taken place a year later (Tr. 327-9), she had been able to work in her job as a printer from 2000 to 2004 because her employer gave her special accommodations regarding work hours, sitting, standing, and lifting. (Tr. 317-18). She stopped work in May of 2004 due to what she described as a "mental breakdown" as a result of family stress, specifically due to her son informing her that he was not graduating from high school. (Tr. 319). She described her worst problem as lower back pain, followed by carpal tunnel syndrome in both arms,

which had developed in 1995, and her third worst problem as migraine headaches as a result of stress. (Tr. 327, 333-4).

Initially, it should be noted that the plaintiff presented no medical evidence of her alleged carpal tunnel syndrome. Therefore, the ALJ's determination that this was not a "severe" impairment is supported by substantial evidence.

The plaintiff does not raise any specific objection to the ALJ's handling of the evidence regarding her psychological condition. It does not appear that she ever received any specific mental health treatment. A consultative psychological examination was conducted by by Dr. Saul Z. Forman on November 8, 2004. Mrs. Hoskins described being in pain from her physical problems and having a large amount of situational stress and anxiety but "no overt panic attacks." (Tr. 222-3). She would drink two beers every night to fall asleep, and six to eight beers at night on the weekends. (Tr. 223-4). Dr. Forman diagnosed a mood disorder "due to scoliosis and migraine headaches with depression," a pain disorder with depression "due to medical condition," relational problems, alcohol abuse, nicotine dependence and narcissistic traits. (Tr. 227). He did not mention any specific functional restrictions, but assessed a current Global Assessment of Functioning (GAF) score of 45-50. A GAF in this range reflects serious symptoms or serious impairment in social, occupational, or school functioning. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34. However, state agency reviewing

psychologists concluded that the plaintiff would have only a moderate limitation in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public.  (Tr. 237-9, 277-9).  While this would appear to be inconsistent with the GAF given by Dr. Forman, his diagnosis of alcohol abuse reflects a condition which cannot be a basis for disability under Public Law 104-121.  While the hypothetical question did not refer to all of the limitations found by the state agency reviewers, it does not appear that a moderate limitation in the plaintiff's ability to deal with the public would preclude the performance of some of the alternative jobs listed by the VE, such as production line worker, and, in view of the fact that the plaintiff has not raised the issue, the court finds no reversible error under the facts of this case.

Regarding the plaintiff's back problems, evidence from Dr. Lawrence Kurz, from before the alleged onset date, shows that in 1998 and 1999 he had performed a fusion of L4-S1 and Mrs. Hoskins was making a good recovery.  (Tr. 164-5).  By May, 1999, her back pain was described as very minimal and the physician noted that she was "totally functional" and nothing further needed to be done.  (Tr. 162).  There was, however, subsequent surgery for exotosis over the right iliac area (Tr. 159), but in October, 2002, Mrs. Hoskins told Dr. Kurz that her low back pain was quite a bit better than before the surgery; she had no radicular symptoms and a

06-518 Hoskins

range of motion 90 percent of normal. (Tr. 157). X-rays showed a solid fusion of L4-S1 with instrumentation in place. (Tr. 158). Dr. Kurz diagnosed "status post" L4-S1 fusion, "status post" lumbar laminectomy, "resolved" lumbar radiculopathy and chronic intermittent pelvic bursitis. He thought the plaintiff's complaints of pain might be due to endometriosis, and stated that he had nothing further to offer. (Id.).

Mrs. Hoskins subsequently had a hysterectomy in February, 2003. (Tr. 193). She later complained of developing daily headaches, and was evaluated for several months by Dr. Martin Belkin, who found prominent trapezius tension and trigger point tenderness and noted that Mrs. Hoskins was relating the presence of significant stressors. (E.g., Tr. 190). An MRI of the brain was normal. (Tr. 192). Nerve blocks and physical therapy were of limited benefit, but Mrs. Hoskins noted that she did not have any headaches or stress when she went away from home for two or three days. (Tr. 184-9). No functional restrictions are given.

An emergency room visit on May 24, 2004 confirms the plaintiff was seen with complaints of anxiety and feelings of numbness after hearing that her son was not going to graduate from high school. (Tr. 207). An examination, including a CT scan of the brain, was normal. (Tr. 207-8). She was referred to a psychiatric social worker and a clinic. (Tr. 208).

Dr. Fouad Batah examined Mrs. Hoskins on one occasion in October, 2004 and noted her complaints of severe low back pain on staying in one position for

more than a few minutes, whether sitting, standing, or walking.  (Tr. 219).  She also described chronic headaches.  Dr. Batah noted scoliosis on observation, and there are multiple scars and one deep scar on the right hip where a bone graft was taken out, but Mrs. Hoskins was able to flex forward 100 degrees and was able to ambulate, squat, and walk on her heels and toes without difficulty.  (Tr. 220).  She had normal motor strength, reflexes, and good sensation.  (Id.).  He did not list any functional restrictions.  (Tr. 221).

A non-examining state agency physician, Dr. David Swan, reviewed the evidence as of January 3, 2005, and concluded that Mrs. Hoskins could perform "light" level work, with occasional balancing, stooping, kneeling, crouching, and crawling, and needed to avoid concentrated exposure to hazards such as machinery and heights.  (Tr. 283-90).  These restrictions are consistent with the ALJ's hypothetical question.  Dr. Swan did not provide any specific rationale for his opinion, referring only to a prior residual functional capacity assessment completed by Scott Barnes, a state agency reviewing source who was described as an "enhanced examiner."  (Tr. 255-62).  It does not appear that this individual was an acceptable medical source under 20 C.F.R. Section 404.1513.

The only examining source to list functional restrictions was Dr. Ronald Dubin, an orthopedist, who examined the plaintiff on March 31, 2005.  Dr. Dubin reviewed some previous x-rays, including some taken when Mrs. Hoskins was a

teenager showing "significant grade III spondylolisthesis," and follow-up x-rays showing a fusion between L4 and S1 with plate and screws. (Tr. 233). Mrs. Hoskins also gave a history of having positive testing for carpal tunnel syndrome in both upper extremities, but these reports were not available. Dr. Dubin's examination showed tenderness over the lower lumbar spine, with forward flexion limited to 45 degrees and backward extension to 30 degrees "with pain." (Id.). There was no motor, sensory, or reflex abnormality. Dr. Dubin's diagnostic impression was "Grade III spondylolisthesis secondary to fusion," and he commented that "I do feel that she is unable to be gainfully employed in most occupations." More specifically, he limited Mrs. Hoskins from lifting more than 15 pounds occasionally and five to ten pounds repetitively, no repetitive bending, stooping, lifting, or crawling, needing to sit and stand at will, and adding that carpal tunnel syndrome would affect her ability to do repetitive work with her upper extremities. (Id.). Subsequently, on April 25, 2005, without any apparent additional examination, Dr. Dubin completed a physical medical assessment form which differs in some respects from his narrative report, although the lifting limits were the same. The medical assessment form limited standing and walking to a total of one to two hours in an eight-hour day (no more than one hour without interruption), and sitting a total of eight hours (no more than three to four hours without interruption), "very

06-518 Hoskins

infrequently" performing all postural activities, and having no limitations in other areas such as reaching, handling, feeling, pushing, and pulling. (Tr. 234-6).

Finally, the plaintiff submitted x-rays of her cervical and lumbar spine dated January 17, 2006, more than six months after the DLI. The cervical spine x-ray showed a reversal of the normal cervical lordosis, but was otherwise normal. (Tr. 296). The lumbosacral spine x-ray showed evidence of previous surgery at L5-S1 with pedicle screws extending from L4 to the sacrum, narrowing of the L2-L3, L4-L5, and L5-S1 disk spaces and anterior spondylolisthesis of L5-S1 of approximately one centimeter. (Tr. 295).

The ALJ rejected Dr. Dubin's functional restrictions because he had examined Mrs. Hoskins on one occasion only, and cited very few physical findings in support of his limitations. (Tr. 22). He also found that the subsequent x-rays did not reflect the claimant's condition prior to the DLI. He opined that the opinions of the state agency "reviewing physicians" were consistent with the longitudinal treatment record and the objective medical evidence. (Id.).

As previously noted, one of the state agency sources was apparently not a physician, and not an acceptable medical source. Dr. Swan clearly was a physician, but he did not have the benefit of a review of the entire record, particularly Dr. Dubin's opinion. However, even if the ALJ's reliance on Dr. Swan was misplaced, he presented an alternative hypothetical question presenting substantially all of Dr.

06-518  Hoskins

Dubin's restrictions to the VE, who testified that Mrs. Hoskins could still perform her past relevant work as an insurance clerk. (Tr. 343-4).  Therefore, although the court disagrees with the ALJ's specific rationale, any error was harmless in view of the VE's testimony.

The decision will be affirmed.

This the 7th day of November, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**